IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


BASEBALL AT TROTWOOD, LLC,                    :
et al.,                                       :

        Plaintiffs,                          :

                                       Case No. 3:98cv260

        vs.                                   :

                                  JUDGE WALTER HERBERT RICE

DAYTON PROFESSIONAL BASEBALL                  :
CLUB, LLC, et al.,                            :

        Defendants.                          :

_____

OPINION; FINDINGS OF FACT AND CONCLUSIONS OF LAW;
JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT NATIONAL
ASSOCIATION OF PROFESSIONAL BASEBALL LEAGUES, INC., AND
AGAINST PLAINTIFF BASEBALL AT TROTWOOD, LLC, ON ITS
COUNTERCLAIM (DOC. #18); JUDGMENT TO BE ENTERED IN FAVOR
OF PLAINTIFFS  ROCK NEWMAN, INC., AND SPORTS SPECTRUM,
INC., AND AGAINST DEFENDANT NATIONAL ASSOCIATION OF
PROFESSIONAL BASEBALL LEAGUES, INC., ON ITS COUNTERCLAIM
(DOC. #18); JUDGMENT TO BE ENTERED IN FAVOR OF ALL
DEFENDANTS AND AGAINST ALL PLAINTIFFS ON CLAIMS SET
FORTH IN THEIR AMENDED COMPLAINT (DOC. #3); TERMINATION
ENTRY

_____

      This litigation arises out of the unsuccessful efforts of Plaintiff Baseball at

Trotwood, LLC ("BAT"), and its two members, Plaintiffs Rock Newman, Inc.

("RNI"), and Sports Spectrum, Inc. ("SSI"), to locate a Class A minor league

baseball franchise in the Dayton area.  The final questions to be resolved in this

litigation arise out of the Counterclaim (Doc. #18) that Defendant National Association of Professional Baseball Leagues, Inc. ("NAPBLI"), has asserted against the Plaintiffs, seeking to recover from them the attorney's fees and expenses it has incurred during this litigation. In its Decision of September 20, 2004 (Doc. #240), the Court concluded that the NAPBLI was entitled to summary judgment on its Counterclaim, as to liability, against BAT, but that it was not entitled to same against RNI and SSI. As a result of that Decision, the only issues remaining to be resolved in this litigation are the amount of BAT's liability to the NAPBLI and whether RNI and/or SSI is liable to that Defendant, for attorney's fees and expenses, and, if so, the amount of that liability. Those issues were tried on January 18, 2005, with the Court sitting as trier of fact. In accordance with the briefing schedule (Doc. #260), the parties have filed their post-trial memoranda. See Docs. ##261, 264 and 266. The Court now sets forth its Findings of Fact and Conclusions of Law. For background purposes, the Court includes in its Findings of Fact certain matters which are uncontroverted or were established as a result of the Court's earlier Decisions in this litigation which entered summary judgment against Plaintiffs. See Docs. ##198 and 240.

By way of explanation, the Court's Findings of Fact, infra, contain findings that the NAPBLI will be permitted to recover some, but not all of the attorney's fees and expenses claimed from BAT. The NAPBLI has submitted evidence, Defendant's Exhibit 2, which is summarized by Defendant's Exhibit 1.[1] The latter document is submitted to establish that it is entitled to recover $383,301.50 for attorney's fees and $65,668.49 for expenses, up through November 30, 2004, in

_____

[1]These Exhibits were elaborated upon by the witnesses called by the NAPBLI.

addition to compensation for attorney's fees incurred after that date.  In its post-trial memorandum (Doc. #261), BAT has argued, inter alia, that the NAPBLI is not entitled to recover some of those claimed fees and expenses.  The Court makes Findings of Fact regarding these arguments.  The Court accepts some of BAT's arguments and, therefore, finds that the NAPBLI is not entitled to recover a portion of the claimed attorney's fees and/or expenses.

I.  Findings of Fact

1.  BAT and its members, RNI and SSI, sought to purchase the Michigan Battle Cats ("Battle Cats"), a Class A minor league baseball franchise which played in the Midwest League, and to relocate that franchise to Hara Arena, located in Trotwood, Ohio.  In order to accomplish that goal, Plaintiffs were required to obtain approval from the NAPBLI and the Midwest League to transfer ownership of the Battle Cats to BAT, and to relocate that franchise to the Dayton area.

2.   The first step in the process of gaining approval for the purchase of a franchise in the Midwest League is to file a Control Interest Transfer Application ("CIT") with that league.  If the Midwest League approves the CIT, it is forwarded to the NAPBLI, which in turn forwards it to Major League Baseball ("MLB").  MLB ultimately returns the CIT to the NAPBLI, with a recommendation of approval or disapproval; however, the ultimate decision on approval of the CIT rests with the NAPBLI.   The Plaintiffs submitted a CIT, as required.

3.  Section 25 of that CIT provides, in pertinent part:

>   The undersigned, both individually and on behalf of the Applicant and all entities and individuals listed in Sections 5, 6 and 7 of this Application, agrees that this Application is being submitted only for the consideration of the President of the National Association of Professional Baseball Leagues, Inc.  Any decision to approve or disapprove this Application will be made by the President of the National Association of Professional Baseball Leagues, Inc. in his or her sole and absolute discretion.  The decision by the National Association of Professional Baseball Leagues, Inc. to approve or disapprove this Application may be based on subjective and objective criteria.  Until this Application is finally approved by the Office of the President, the Office of the Commissioner of Baseball and the appropriate League, the Applicant will not be entitled to any privilege nor have any of the rights of a Minor League Club.  THE NATIONAL ASSOCIATION OF PROFESSIONAL BASEBALL LEAGUES, INC., THE OFFICE OF THE COMMISSIONER OF BASEBALL, THE APPROPRIATE LEAGUE AND ITS MEMBER CLUBS, AND ALL OF THEIR RESPECTIVE OFFICERS, EMPLOYEES, OWNERS, AGENTS AND DESIGNEES SHALL NOT BE LIABLE TO THE UNDERSIGNED, THE APPLICANT OR ANY OF THE ENTITIES AND INDIVIDUALS LISTED IN SECTIONS 5, 6 AND 7 OF THIS APPLICATION OR ANY THIRD PARTY FOR ANY CLAIM, LOSS OR DAMAGE GENERAL OR SPECIAL, INCIDENTAL OR CONSEQUENTIAL, INCLUDING LOST PROFITS, ARISING OUT OF OR IN ANY WAY RELATED TO THE PROPOSED TRANSFER OF THE CLUB TO THE APPLICANT OR THE PROCESSING OR DENIAL OF THIS APPLICATION.  THE APPLICANT, BOTH INDIVIDUALLY AND ON BEHALF OF ALL ENTITIES AND INDIVIDUALS LISTED IN SECTIONS 5, 6 AND 7 OF THIS APPLICATION, AGREES THAT THE SOLE AND EXCLUSIVE REMEDY AGAINST THE NATIONAL ASSOCIATION OF PROFESSIONAL BASEBALL LEAGUES, INC.[,] AND ITS OFFICERS, EMPLOYEES OR AGENTS FOR CLAIM RELATING TO THIS APPLICATION SHALL BE FOR THE RETURN OF ANY APPLICATION FEE PAID TO THE NATIONAL ASSOCIATION OF PROFESSIONAL BASEBALL LEAGUES, INC.  The Applicant and all entities and individuals listed in Sections 5, 6 and 7 of this Application shall be jointly and severally liable to the National Association of Professional Baseball Leagues, Inc., its officers, employees and agents, for payment of any attorneys' fees, court costs and expenses incurred in defense of any claim brought against any of them contrary to the terms of this Section 25.

Joint Exhibit 1 at 9-10 (capitalization in the original and emphasis added).

- **4** -

4.  The Plaintiffs were unsuccessful in their efforts to purchase the Battle Cats and to move that franchise to Trotwood.  As a consequence, they brought this litigation setting forth claims against the NAPBLI and numerous other parties.  In response, the NAPBLI has asserted a Counterclaim against the Plaintiffs, seeking to recover the attorney's fees, costs and expenses it would incur in the defense of Plaintiffs' claims, in accordance with Section 25 of the CIT.  See Doc. #18.

5.  Since BAT was designated as the Applicant on the CIT, it can be held liable for the attorneys' fees, costs and expenses incurred by the NAPBLI in defense of this lawsuit.  In its Amended Complaint (Doc. #3), BAT set forth the following claims against the NAPBLI, to wit: 1) unreasonable restraint of trade and monopolization in violation of §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2; 2) conspiracy to monopolize in violation of the Valentine Act, Chapter 1331 of the Ohio Revised Code; 3) tortious interference with prospective contractual and business relations; 4) civil conspiracy; 5) violations of 42 U.S.C. §§ 1981 and 1985, under the theory that BAT was discriminated against on the basis of race, since the principal of one of its members is an African-American.  Section 25 of the CIT, supra, provides that the NAPBLI shall not be liable to BAT for claims in any way related to the proposed transfer and that BAT's sole and exclusive remedy shall be the return of its application fee.  BAT brought its claims against the NAPBLI in violation of Section 25, since those claims are related to the proposed transfer of the ownership of the Battle Cats, and BAT has sought to recover more than its application fee from the NAPBLI in this litigation.  Therefore, BAT is liable to that Defendant for attorney's fees and expenses incurred in defense of those

claims, given that they were brought in violation of Section 25. However, since the NAPBLI has failed to present evidence that either RNI or SSI was listed in Section 5, 6 or 7 of the CIT, neither of those Plaintiffs is similarly liable to the NAPBLI.

6. The NAPBLI retained its longtime counsel, George Yund ("Yund") of the law firm of Frost, Brown and Todd, LLC ("Frost, Brown"), to defend it in this litigation.[2] Yund, who is primarily a labor lawyer,[3] turned to his partners Douglas Hart ("Hart") and Richard Goehler ("Goehler") to take primary responsibility for the defense of the NAPBLI. However, Yund has continued to be involved in the defense and has reviewed all of the bills that have been submitted. A number of associates, paralegals and other personnel of Frost, Brown have also been involved in this matter, including Thomas Allen ("Allen") and Scott Brown.

7. In addition to providing a defense, Frost, Brown attorneys have represented the NAPBLI in its efforts to have its insurance carrier pay for that defense and to prosecute its Counterclaim.[4]

---

[2]When this lawsuit was filed, Yund was a member of the firm of Frost and Jacobs, which became Frost, Brown as a result of a merger. For sake of convenience, the Court uses Frost, Brown throughout this decision to designate the law firm that represented the NAPBLI herein. Yund and Frost, Brown have represented the NAPBLI since 1988.

[3]For instance, Yund has represented the Cincinnati Reds in baseball salary arbitration.

[4]Throughout this document, when the Court refers to the prosecution of the Counterclaim, it includes efforts by the NAPBLI to amend that pleading to assert the claims set forth therein against other parties, which the NAPBLI denominated

8.  Frost, Brown has submitted bills in order to recover for the time spent by those associated with that law firm on this case and for the expenses it has incurred as a result.  See Defendant's Exhibits 1 and 2.

9.  In accordance with Section 25 of the CIT, the NAPBLI is not allowed to recover the attorney's fees and expenses it incurred to prosecute its Counterclaim, since those fees and expenses were not "incurred in defense of any claim brought" in contravention of the terms of that provision of the CIT.  Counsel for the NAPBLI spent 72 hours prosecuting the Counterclaim, through November 30, 2004.  When that number of hours is multiplied by the applicable hourly rates, the product is $19,094.25, which the Court will not permit the NAPBLI to recover.  In addition, the Court will not permit that Defendant to recover attorney's fees for the work performed by its counsel after November 30, 2004, since that work was likewise done in the prosecution of the Counterclaim.

10.  In accordance with Section 25 of the CIT, the NAPBLI is not allowed to recover the attorney's fees and expenses it incurred in its dispute with its insurance carrier, since those fees and expenses were not "incurred in defense of any claim brought" in contravention of the terms of that provision of the CIT.  All time recorded by Scott Brown, 46.7 hours, was devoted to this task, as well as 10 hours by Yund and 50 hours by Goehler.  Therefore, counsel for the NAPBLI spent 106.7 hours on the dispute with the NAPBLI's insurance carrier.  When that

---

as a motion for leave to file a third-party complaint.  See Doc. #243.

number of hours is multiplied by the applicable hourly rates,[5] the product is $20,210.35, an amount which the Court will not permit the NAPBLI to recover.

11.  The NAPBLI will not be permitted to recover $2,127.80, for 12.8 hours expended by Allen, since it has failed to prove that his efforts in this litigation were necessary.

12.  Under Florida law (Florida Statutes § 57.104), the NAPBLI may not recover for clerical tasks performed by non-attorneys.  As a consequence, the NAPBLI is not permitted to recover the sum of $11,398.00, which represents 236.6 hours spent by non-attorneys on clerical tasks.

13.  Ben Hayes ("Hayes") was general counsel for the NAPBLI, when this litigation was initiated in June, 1998.  He left that position in September, 2000, and went into private practice.  Hayes, however, continued to be involved in this litigation. Frost, Brown billed $21,991.76, as expenses, for Hayes' work after he had entered private practice.  The NAPBLI is entitled to recover that sum, because Hayes' efforts were necessary to the defense of the NAPBLI in this litigation.

14.  The NAPBLI is not entitled to recover for time billed for research performed by summer associate, Joseph Lanton ("Lanton"), on June 11, 1999, $216.00 for 2.7 hours, and the concomitant research expense of $244.25, since there was no

---

[5]The applicable rate for Yund and Goehler is $245.00.  Scott Brown's rate varied throughout his involvement in this matter; however, $5,510.35 was billed for his efforts.

evidence that his research concerning discounts for tickets in public accommodation cases was related to any issue in this litigation.  In addition, the NAPBLI is not entitled to recover $26.00, for .4 hours expended on December 31, 2001, by paralegal Kendra Hall, since the task she performed on that date, Internet research on medical provider information, was unrelated to the issues in this litigation.

15.  The NAPBLI cannot recover an additional sum of $2,707.51 for expenses, since those expenses were incurred in connection with the prosecution of the Counterclaim or the insurance coverage dispute with its carrier.

16.  On its summary exhibit (Defendant's Exhibit 1), the NAPBLI states that it is entitled to recover attorney's fees in the sum of $383,301.50.  Based upon the foregoing, the Court has found that the following sums must be deducted from that amount:

A. $19,094.25: For time spent on the Counterclaim: Finding of Fact #9.

B. $20,210.35: For time spent on the dispute with the insurance carrier: Finding of Fact #10.

C. $2,127.80: For time spent by Allen: Finding of Fact #11.

D. $11,398.00: For time spent on clerical tasks: Finding of Fact #12.

E. $216.00: For time spent by Lanton: Finding of Fact #14

F. $26.00: For time spent by Hall: Finding of Fact #14.

Accordingly, the Court finds that the NAPBLI is not entitled to recover $53,072.40 of the amount of attorney's fees it has claimed, representing 431.9 hours expended by attorneys and non-attorneys.[6]


17.  On its summary exhibit (Defendant's Exhibit 1), the NAPBLI states that it is entitled to recover expenses in the amount of $65,668.49.  Based upon the foregoing, the Court has found that the following sums must be deducted from that amount:

      A. $244.25: Expenses incurred by Lanton: Finding of Fact #14.

      B. $2,707.51: Expenses incurred in connection with the Counterclaim and the dispute with the insurance carrier: Finding of Fact #15.

Accordingly, the NAPBLI is not entitled to recover expenses in the amount of $2,951.76.


18.  Deducting the non-recoverable fees and expenses from the amounts claimed by the NAPBLI,[7] $330,229.10 of claimed attorney's fees and $62,716.73 of claimed expenses could be awarded.

---

[6]Defendant's Exhibit 1 sets forth fees and expenses incurred through November 30, 2004.  The NAPBLI has also requested to recover attorney's fees for work performed by counsel after that date.  Since such work was done exclusively in connection with the prosecution of the Counterclaim, the NAPBLI is not entitled to recover attorney's fee for that work.

[7]In other words, the Court has subtracted $53,072.40 (non-recoverable attorney's fees), from $383,301.50 (claimed attorney's fees), and $2,951.76 (non-recoverable expenses), from $65,668.49 (claimed expenses).

19.  The Court finds that the NAPBLI has met its burden of proving by the preponderance of the evidence that it is entitled to recover the sum of $330,229.10, as attorney's fees in accordance with Section 25 of the CIT.  That finding is based upon two subsidiary findings, concerning two elements used to compute the lodestar amount under Florida law.  First, the Court finds that 1778.4 hours, the number of hours for which compensation is properly sought (as reduced above), were reasonably, necessarily and actually expended in the defense of the claims brought against the NAPBLI by BAT, in violation of Section 25 of the CIT. Second, the hourly rates charged, which ranged from $145.00 to $260.00 per hour for attorneys, and from $20.00 to $95.00 for non-attorneys, were reasonable and in accordance with similar rates charged in this legal market.[8]

20.  The Court finds, in accordance with Section 25 of the CIT, that expenses in the sum of $62,716.73 were necessarily, reasonably and actually incurred in the defense of the NAPBLI against the claims of the Plaintiffs in this litigation, all of which were brought in violation of that provision of the CIT.

21.  The NAPBLI has proved by the preponderance of the evidence that it is entitled to attorney's fees and expenses in the sum of $392,945.83.

_____

[8]Although the substantive law of Florida must be applied to the request of the NAPBLI to recover attorney's fees and expenses, it is appropriate to compute the fee award in accordance with the hourly rates charged in this legal market.  Under Rule 4-1.5(b)(1)(C) of the Rules Regulating the Florida Bar, a court should consider the hourly rates customarily charged in the Southern District of Ohio, when determining the reasonableness of a requested fee.

II.  Opinion

As is indicated, the Court has previously held in its Decision of September 20, 2004 (Doc. #240), that BAT is liable to the NAPBLI on the latter's Counterclaim for attorneys' fees and expenses incurred to defend against the claims asserted against it in this litigation.  In that Decision, the Court also concluded that genuine issues of material fact existed as to the liability of RNI and SSI to the NAPBLI for its attorneys' fees, costs and expenses, because no evidence had been presented to indicate that either was named in Section 5, 6 and/or 7 of the CIT, which is a predicate for imposing liability upon those Plaintiffs. Since the NAPBLI did not present evidence at trial that either of those Plaintiffs was listed in any of those provisions of the CIT, neither RNI nor SSI can be held liable on the Counterclaim of the NAPBLI.  Therefore, the Court turns to the sole remaining question in this litigation, the amount of BAT's liability.  However, before discussing the amount of that liability, the Court will briefly set forth its reasons for finding no merit in the argument set forth by BAT in its post-trial memorandum (Doc. #261), that it should not be required to pay <u>any</u> of the attorneys' fees and expenses incurred by the NAPBLI in defending this lawsuit, since the claims set forth in its Amended Complaint are not "contrary to the terms of Section 25" of the CIT.

In its Decision of September 20, 2004 (Doc. #240), the Court granted summary judgment in favor of the NAPBLI, as to liability on its Counterclaim against BAT.  In opposing that request for summary judgment, BAT did not raise this argument, and it has not offered any explanation for that failure.  Indeed, in that Decision, the Court noted that the Plaintiffs had failed to argue that the claims

it asserted in this litigation were not contrary to the terms of Section 25.  See Doc. #240 at 8-9.  Therein, the Court concluded, as a matter of law, that the claims asserted by BAT herein were contrary to that provision in the CIT.  Id.  BAT has not requested that the Court reconsider its grant of summary judgment as to its liability in favor of the NAPBLI.[9]  Moreover, BAT did not allude to this argument in its pre-trial Proposed Findings of Fact and Conclusions of Law (Doc. #253).  Indeed, BAT did not raise this argument until more than six weeks after trial, when it filed its post-trial memorandum (Doc. #261).  Therefore, BAT has waived this argument.  See e.g., Pure Tech Systems, Inc. v. Mt. Hawley Ins. Co., 2004 WL 619312 (6th Cir. 2004) (party waives right to raise argument on appeal by failing to raise it when opposing motion for summary judgment).  Cf. ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc., 402 F.3d 700, 704 n.2 (6th Cir. 2005) (party waives right to challenge on appeal grant of summary judgment on certain claims by failing to raise those claims in its brief); Radvansky v. City of Olmsted Falls, 395 F.3d 291, 310-11 (6th Cir. 2005) (same).

Moreover, even if BAT had not waived this argument, the Court would have rejected it.  In its previous Decision (Doc. #240), this Court concluded that the CIT must be interpreted in accordance with the substantive law of Florida, given that Section 25 so provides.  When interpreting a contract under Florida law, "a court must give effect to the plain and ordinary meaning of its terms," with words being given their natural meaning.  Golf Scoring Systems Unlimited, Inc. v. Remedio, 877 So.2d 827, 829 (Fla. App. 2004).  Although Florida law requires that a contract be

---

[9]Since the Court's grant of summary judgment as to liability was interlocutory, it could have been reconsidered at any time prior to the entry of final judgment.  See Fed. R. Civ. P. 54(b).

construed against its maker, that rule is applicable only when the contract is ambiguous or its meaning is otherwise unclear. Allstate Ins. Co. v. Shofner, 573 So.2d 47, 49 (Fla. App. 1990). In addition, a court must give effect to the plain meaning of the language chosen by the parties to a contract, rather than rewriting the clear and unambiguous terms of an agreement. Pol v. Pol, 705 So.2d 51, 53 (Fla. App. 1997). Section 25 of the CIT unambiguously provides that the NAPBLI shall not be liable to the Applicant, BAT, "for any claim … arising out of or in any way related to the proposed transfer of the club to the applicant or the processing or denial of this application."[10] All claims asserted by BAT herein are related to the proposed transfer of the Battle Cats to it; therefore, BAT breached Section 25 by asserting those claims herein and is liable to the NAPBLI for the attorney's fees and expenses the latter incurred to defend the claims brought by BAT in this litigation.

As is indicated, this Court has concluded that the substantive law of Florida must be applied to resolve the Counterclaim of the NAPBLI, since Section 25 of the CIT provides that the document shall be interpreted in accordance with such substantive law. In its post-trial memorandum, BAT has acknowledged the applicability of Florida's substantive law, while arguing that the Court must apply the procedural law of Ohio in resolving the NAPBLI's Counterclaim. See Doc. #261 at 10-16. In particular, BAT contends that this Court must apply the law of Ohio in order to decide the burden of proof imposed upon the NAPBLI, and has cited a number of decisions by Ohio courts which, it argues, demonstrate that the NAPBLI has failed to meet that burden. BAT has not, however, cited a single decision by

---

[10]Therefore, the rule that an ambiguous or unclear contract must be construed against its maker has no applicability herein.

an Ohio court that suggests that the Ohio procedural law concerning the burden of proof or Ohio decisions deciding whether that burden has been met must be applied to resolve a claim for attorney's fees and expenses, where the right to recover same was created by a contract which is governed by the substantive law of another state.[11]  If this Court were to apply Ohio's burden of proof herein, it would violate the command of the United States Supreme Court in <u>Cities Service Oil Co. v. Dunlap</u>, 308 U.S. 208 (1939), wherein it held that the burden of proof is part of the substantive law rather than a question of procedure.  <u>See</u> <u>also</u>, <u>Morales v. Am. Honda Motor Co.</u>, 150 F.3d 500, 506 (6th Cir. 1998) (law of state whose substantive law governs must be applied when ruling on a motion for judgment as a matter of law).  Accordingly, the Court declines to apply the burden of proof established by Ohio law or to assess whether the NAPBLI has proved its Counterclaim by reference to the decisions of Ohio courts cited by BAT.

Under Florida law, reasonable attorney's fees are to be determined by using the federal lodestar approach as the basis for setting reasonable fee awards.  <u>Kuhnlein v. Department of Revenue</u>, 662 So.2d 309 (Fla. 1995); <u>Florida Patient's Compensation Fund v. Rowe</u>, 472 So.2d 1145, 1150 (Fla.1985).  Under that approach, the lodestar figure is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney.  <u>Id</u>. at 1151.  In determining whether the

---

[11]Ohio courts have indicated that the statutes of limitations created by the Ohio General Assembly must be applied even though the substantive law of another state is applicable, since such statutes are "procedural."  <u>See</u> <u>e</u>.g., <u>White v. Crown Equipment Corp.</u>, 160 Ohio App.3d 503, 509, 827 N.E.2d 859, 863 (2005).  However, no Ohio court has extended such decisions to matters such as the burden of proof.

lodestar amount reflects a reasonable amount of attorney's fees, Florida courts will look to the factors set forth in Rule 4-1.5(b)(1) of the Rules Regulating the Florida Bar.[12]  Kuhnlein, 662 So.2d at 315.  The party seeking an award of attorney's fees under Florida law has the burden of proving the amount of that award by the preponderance of the evidence.  South Pointe Family and Children Center v. First National Bank of Chicago, 783 So.2d 327, 228 (Fla. App. 2001).

---

[12]Rule 4-1.5(b)(1) provides:
> (b) Factors to Be Considered in Determining Reasonable Fee and Costs.
> (1) Factors to be considered as guides in determining a reasonable fee include:
> (A) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (B) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
> (C) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
> (D) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
> (E) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
> (F) the nature and length of the professional relationship with the client;
> (G) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
> (H) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

In Kuhnlein, the Florida Supreme Court noted that the lodestar amount can be enhanced by a multiplier to give effect to the contingency of a recovery and to give recognition to the substantial benefit conferred by counsel.  662 So.2d at 315. Herein, since the NAPBLI has not suggested that the Court apply a multiplier and the Court has divined no reason to do so on its own, it is not necessary to consider that question.

The NAPBLI presented an exhibit at trial, demonstrating that it incurred attorney's fees and expenses in the amount of $448,969.99, through November, 2004.  See Defendant's Exhibit 1.[13]  That figure is comprised of $383,301.50, for attorney's fees and $65,668.49, for expenses.  Id.  In addition, the NAPBLI presented testimony that an additional $11,623.95 for attorney's fees was incurred during December, 2004, and through January 16, 2005.  Thus, the NAPBLI contends that it is entitled to recover the entire amount of $460,593.94. BAT argues that this amount must be reduced for a number of reasons.  As a means of analysis, the Court addresses those contentions in the order in which they appear in BAT's post-trial memorandum (Doc. #261).

According to BAT, the Court cannot award attorney's fees to the NAPBLI for the amount of time expended by its counsel in prosecuting its Counterclaim.  In particular, BAT contends that such fees may not recovered, because Section 25 of the CIT only authorizes the NAPBLI to recover the attorney's fees it has "incurred in defense of any claim," which was brought against it in violation of that Section. Since neither that nor any other provision of the CIT authorizes the NAPBLI to recover the attorney's fees it incurred to prosecute a claim against BAT, the Court inescapably concludes that the NAPBLI cannot recover the attorney's fees it

---

[13]Defendant's Exhibit 1 is a summary of the attorney's fees and expenses billed by counsel for the NAPBLI.  The billing records reflected in that summary are set forth in Defendant's Exhibit 2.

incurred prosecuting its Counterclaim.[14]  Accordingly, the Court turns to the amount of attorney's fees the NAPBLI incurred in that exercise.

As an initial matter, since the $11,623.95 incurred for attorney's fees by the NAPBLI after November, 2004, was for the prosecution of its Counterclaim, that amount cannot be recovered.  BAT has submitted Attachment 3 to its post-trial memorandum (Doc. #261), which is an analysis of the time records of counsel for the NAPBLI.  In particular, that Attachment sets forth the time entries from Defendant's Exhibit 2, which it contends contains work by counsel for the NAPBLI on its Counterclaim.  BAT claims that Attachment 3 demonstrates that the Court must reduce the amount set forth on Defendant's Exhibit 1 for attorney's fees incurred through November, 2004, $383,301.50, by $52,693.50.  That is the amount that BAT contends was incurred to prosecute the Counterclaim.  The NAPBLI argues that only $14,140.50 has been billed for attorney's fees to prosecute the Counterclaim, and has supported that assertion with Attachment 3 to its post-trial memorandum (Doc. #264), which is an analysis and critique of BAT's Attachment 3.[15]

---

[14]Without presenting an argument which would challenge the foregoing, the NAPBLI argues that it is entitled to recover such fees under an indemnity theory, predicated upon Allen v. Standard Oil Co., 2 Ohio St.3d 122, 443 N.E.2d 497 (1982).  Without addressing the merits of that argument, the Court notes that the Counterclaim of the NAPBLI was predicated upon the allegation that BAT was liable for its attorney's fees by virtue of Section 25 of the CIT, rather than under an indemnification theory.  See Doc. #18.  Moreover, the NAPBLI has not sought leave to amend its Counterclaim to allege that it is entitled to recover the attorney's fees it has incurred under such a theory.  Accordingly, the Court rejects the argument that the NAPBLI can recover the attorney's fees it incurred prosecuting its Counterclaim in accordance with Allen.

[15]The Attachment 3 to the post-trial memorandum of the NAPBLI also includes the hourly rate of the particular attorney.

Based upon the evidence presented at trial, in particular, Defendant's Exhibit 2, as analyzed by the parties in the Attachments 3 to their post-trial memoranda, the Court finds that the sum of $19,094.25 must be excluded from amount of claimed attorney's fees, $383,301.50.[16]  The amount excluded is for 72 hours spent by counsel through November 30, 2004, prosecuting the Counterclaim.  In reaching that finding, the Court notes that many of the items set forth by BAT on its Attachment 3 involve time recorded by the attorneys representing the NAPBLI to review documents filed by counsel representing the other Defendants in this case and to monitor the progress of those claims.  This Court flatly rejects the implicit proposition that the NAPBLI may not recover the fees it incurred as a result of its counsel's monitoring the Plaintiffs' claims against other Defendants in this litigation, on the theory that such attorney's fees were not incurred in defense of claims brought against the NAPBLI.  The Plaintiffs chose to join their claims against that Defendant with those they have asserted against the 26 other Defendants they joined in this litigation.  A defendant cannot adequately defend itself in a complex, multi-defendant lawsuit, such as that herein, without monitoring the activities of the other defendants and attempting to coordinate its defenses with them.  Accordingly, the Court has refused to reduce the amount of attorney's fees sought by the NAPBLI by the time expended to monitor claims against other Defendants.  Therefore, the Court has computed the sum of $19,094.25 by multiplying 72, the number of hours which the Court finds were expended

---

[16]The sum of $19,094.25 also includes $215.00 which is not set forth by the parties in their Attachments 3.  In particular, that sum represents .4 hour recorded by Hart and .3 hour recorded by Yund in November, 2004.  See Defendant's Exhibit 2 at 223.  The Court finds that this time was related to the prosecution of the Counterclaim, rather than defending against the Plaintiffs' claims.

prosecuting the Counterclaim, by the hourly rates of the attorney in question, which are included on Attachment 3 of the NAPBLI.[17]

Next, BAT argues that the NAPBLI cannot recover for attorney's fees for the time its counsel spent on matters relating to its dispute with its insurance carrier, concerning insurance coverage. BAT contends that the Court must exclude $30,105.00 from the sum of $383,301.50, which the NAPBLI asserts it is entitled to recover for attorney's fees on its Counterclaim. BAT has supported this contention with Attachment 4 to its post-trial memorandum (Doc. #261), which is a summary of the entries from Defendant's Exhibit 2, which includes time expended by counsel working on the insurance coverage dispute.[18] In response, the NAPBLI argues that it is entitled to recover such fees. This Court cannot agree. Section 25 of the CIT provides that the latter can recover the attorney's fees it has "incurred in defense of any claim" brought against it in violation of

---

[17]A note about the Court's methodology. Some entries on the parties' Attachments 3 set forth the time expended by counsel monitoring claims against other Defendants, while other entries contain only the time recorded while working on the Counterclaim. A third category of entries includes time spent by counsel on both tasks. In order to compute the number of hours spent prosecuting the Counterclaim, so as to exclude same from the award herein, the Court has included those hours set forth in the entries that include only time prosecuting the Counterclaim and excluded time recorded in entries devoted exclusively to monitoring. With respect to the third category, the Court has decided, based upon the intimate knowledge of this lawsuit and the tasks performed by counsel gained from supervising it for seven years, conducting many conferences with counsel, ruling upon numerous motions and resolving uncountable discovery disputes, as to each item, what percentage of the time in each entry was devoted to prosecuting the Counterclaim.

[18]The Court notes that some of the entries which BAT has placed on Attachment 4 were also on its Attachment 3, as time expended pursuing the Counterclaim. See e.g., Attachment 4 at 2 (8/21/98 entry of DEH); Id. at 3 (9/15/98 entry of DEH). Needless to say, the Court has not excluded the same time twice, since the NAPBLI was not billed on two occasions.

Section 25.  Neither that nor any other provision of the CIT authorizes the NAPBLI to recover the attorney's fees it incurred in a coverage dispute with its insurance carrier.  Therefore, the Court concludes that the NAPBLI cannot recover the attorney's fees it incurred in the course of that dispute.[19]   Accordingly, the Court turns to the amount of attorney's fees the NAPBLI incurred during its dispute with its insurance carrier, in order to exclude same from the attorney fee award.

As an initial matter, evidence at trial showed that Scott Brown, an associate with Frost, Brown, devoted all of his time in this matter to the insurance coverage dispute.  Therefore, the Court will exclude $5,510.35, the amount billed for the 46.7 hours expended by Scott Brown, from the total amount claimed for attorney's fees, $383,301.50.  The NAPBLI contends that BAT has overstated the remainder of the time which its counsel expended resolving the insurance coverage dispute. Based upon Yund's testimony, the Court finds that, in addition to the time spent by Scott Brown on insurance coverage questions, Yund himself spent 10 hours and Goehler 50 hours on that task.  Finding that this time was billed at $245 per hour, the Court will not permit the NAPBLI to recover an additional $14,700 in attorney's fees for time expended during the dispute with its insurance carrier.  Adding that sum to amount of attorney's fees the NAPBLI seeks for Scott Brown's time, the Court will deduct a total of $20,210.35, which represents 106.7 hours expended by counsel, from the sum of $383,301.50, which the NAPBLI seeks to recover.

_____

[19]The NAPBLI once again argues that it is entitled to recover such fees under an indemnity theory, predicated upon <u>Allen</u>, without putting forward an argument that would challenge the Court's analysis of the parties' contract.  Based upon the above reasoning (<u>see</u> Footnote 13, <u>supra</u>), the Court rejects that argument.

BAT also argues that the NAPBLI may not recover for the time billed by Allen.  The NAPBLI seeks to recover $2,127.80, representing 12.8 hours expended by him.  This Court agrees with BAT that the NAPBLI cannot recover that sum. Under Florida law, as with federal law, parties seeking to recover attorney's fees are expected to exercise "billing judgment," and, thus, to exclude from such a request unnecessary and duplicative time expended by counsel.  Centex-Rooney Construction Co., Inc. v. Martin County, 725 So.2d 1255, 1259 (Fla. App. 1999) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).  The NAPBLI has failed to exercise such judgment by seeking to recover for Allen's time.  His time entries are summarized in Attachment 5 to BAT's post-trial memorandum (Doc. #261).  Allen recorded time for 68 separate days.  The vast majority of entries of Allen's time are for one-tenth of an hour, with one and three-tenths of an hour being the longest he spent on any task related to this litigation.  He expended the vast majority of the 12.8 hours he recorded reviewing materials drafted by others. There is no indication that Allen followed up his reviews with suggestions about how a particular draft could have been improved or suggested how others might be drafted.  Under those circumstances, the Court is compelled to conclude that the NAPBLI has failed to prove that Allen's efforts in this litigation were necessary. Accordingly, it will not permit the NAPBLI to recover attorney's fees in the sum of $2,127.80 for those efforts.

In addition, BAT contends that the NAPBLI cannot recover an amount for time and expenses incurred by counsel to travel.  BAT notes that, although this litigation was filed in Dayton, the NAPBLI retained Cincinnati based counsel to represent it.  In support of this assertion, BAT has relied upon decisions by Florida

- 22 -

courts, which have denied a party in a domestic relations matter the recovery of attorney's fees incurred as a result of her counsel traveling from his office in one county to the court at which the proceeding would be held in another county. See Chandler v. Chandler, 330 So.2d 190 (Fla. App. 1976) (denying recovery for attorney travel time which represented more than 50% of the attorney's fees requested).  Therein, the court denied recovery for travel time because there was no indication that fees were customarily charged for travel time in that area and, further. because there was an absence of proof that numerous competent lawyers practicing in the county in which the matter was resolved could not have represented the party seeking fees.  See also, Belmont v. Belmont, 761 So.2d 406 (Fla. App. 2000).  Since those decisions are distinguishable, this Court does not conclude that they preclude recovery for travel time in this litigation.  Unlike the situations in those cases, lawyers who practice in the Southern District of Ohio travel frequently between Dayton, Cincinnati and Columbus.  Parties appearing in Dayton are as commonly represented by attorneys from Columbus or Cincinnati, as they are by counsel from Dayton.  Therefore, unlike Chandler, it is customary in this legal market to pay counsel to travel from Cincinnati to Dayton.  Moreover, this was a complex lawsuit, with numerous Defendants joined and claims asserted by the Plaintiffs, who chose to sue the NAPBLI in a forum which was far from its residence in Florida.  Given that Frost, Brown has represented the NAPBLI since 1988, it would be difficult to conclude that numerous lawyers in Dayton could have represented it in this complex case.  For instance, no other attorney would have the knowledge of that Defendant possessed by Frost, Brown.  Moreover, it bears emphasis that Chandler and its progeny have been distinguished in lawsuits

which do not arise out of domestic relations disputes.  Eve's Garden, Inc. v. Upshaw & Upshaw, Inc., 801 So.2d 976 (Fla. App. 2001).  Accordingly, this Court will not deny recovery for attorney's fees and expenses arising out of travel by its counsel.

Additionally, BAT contends that the Court cannot permit the NAPBLI to recover for clerical services performed by non-attorneys.  In support of that proposition, BAT relies upon Florida Statutes § 57.104, which provides:

> In any action in which attorneys' fees are to be determined or awarded by the court, the court shall consider, among other things, time and labor of any legal assistants who contributed nonclerical, meaningful legal support to the matter involved and who are working under the supervision of an attorney. For purposes of this section "legal assistant" means a person, who under the supervision and direction of a licensed attorney engages in legal research, and case development or planning in relation to modifications or initial proceedings, services, processes, or applications; or who prepares or interprets legal documents or selects, compiles, and uses technical information from references such as digests, encyclopedias, or practice manuals and analyzes and follows procedural problems that involve independent decisions.

Under that statute, a court awarding fees must consider the time and labor of legal assistants who contribute meaningful legal support of a nonclerical nature.  See e.g., Zunde v. International Paper Co., 2000 WL 1763843 (M.D.Fla. 2000); Loper v. Allstate Ins. Co., 616 So.2d 1055 (Fla. App. 1993).  Clerical tasks performed by non-attorneys cannot be recovered as part of attorney's fees, and the party seeking to recover fees for time spent by non-attorneys has the burden of showing that the time was expended on nonclerical tasks.  Dayco Products v. McLane, 690 So.2d 654 (Fla. App. 1997).  According to BAT, the Court must reduce the amount of attorney's fees being sought by $17,054.50, which represents 425.6 hours expended by non-attorneys on clerical tasks.  It has supported that assertion

with Attachments 9 and 10. The NAPBLI has submitted a counter Attachment 9, which it contends shows time expended by non-attorneys on nonclerical tasks. Based upon its review of the evidence (in particular Defendant's Exhibit 2), as well as upon the parties submissions, the Court finds that the NAPBLI cannot recover $11,398.00, which represents 236.9 hours non-attorneys spent on clerical tasks.

Next, BAT argues that the Court should decline to permit the NAPBLI to recover $21,991.76, as expenses incurred as a result of keeping Hayes involved in this litigation. Hayes was formerly general counsel for the NAPBLI. He remained in that position until September 2000, more than two years after this litigation had been initiated, when he went into private practice in Florida. Nonetheless, the NAPBLI wanted Hayes to remain involved in this lawsuit. As a result, Frost, Brown billed $21,991.76 in expenses for his time and associated expenses. BAT contends that the NAPBLI failed to meet its burden of proving that Hayes' continued participation in this litigation was necessary. This Court cannot agree. On the contrary, the Court finds that the NAPBLI has met its burden in that regard. In particular, the Court relies upon the testimony of Scott Poley ("Poley"), who succeeded Hayes as the general counsel to the NAPBLI, and Hart, both of whom explained the importance of Hayes in assisting the NAPBLI in its defense. For instance, the evidence showed that Hayes had great familiarity with the many parties to this lawsuit, baseball rules in general and the way in which minor league baseball works. Hart also explained that Hayes was very helpful in developing strategy for the defense of the NAPBLI. Accordingly, the NAPBLI may recover expenses in the sum of $21,991.76, incurred as a result of Hayes' continued role in this litigation.

BAT also argues that the Court should refuse to award $242.00 in attorney's fees, for 3.1 hours expended, and $244.25 in expenses, because the description of those matters on Defendant's Exhibit 2 clearly demonstrate that they are not related to this litigation.  See Doc. #261 at 32-33.  The Court agrees and will not award those sums to the NAPBLI.   In addition, the Court finds that the NAPBLI is not entitled to recover $26.00, for .4 hours expended on December 31, 2001, by paralegal Kendra Hall, since the task she performed on that date, Internet research on medical provider information, is unrelated to the issues in this litigation.

Finally, BAT argues that the Court cannot allow the NAPBLI to recover certain expenses, which are described on Attachment 12 to its post-trial memorandum (Doc. #261).  Attachment 12 summarizes the allegedly unrecoverable expenses (in addition to the expenses related to Hayes' continued participation in this lawsuit) that are set forth on Defendant's Exhibit 2.[20]  The NAPBLI has submitted its own Attachment 12 with its post-trial brief (Doc. #264), which demonstrates, it contends, that most of the disputed expenses are recoverable.  The challenged expenses the parties discuss on their Attachments 12 were incurred by Frost, Brown in connection with the prosecution of the Counterclaim and the resolution of the dispute with the NAPBLI's insurance carrier. Based upon the reasoning above concerning the question of whether the NAPBLI can recover attorney's fees for those tasks, the Court finds that the CIT does not permit the NAPBLI to recover expenses for same.  Based upon its review of the

_____

[20]The Court notes that $244.25 in expenses, the recovery of which the Court has denied above, is also included on Attachment 12.

evidence, as well as the parties' submissions, the Court finds that the NAPBLI cannot recover $2,707.51 of the expenses it has claimed, since they were incurred to prosecute the Counterclaim and to resolve the insurance coverage dispute.

As is indicated above, the NAPBLI has set forth on Defendant's Exhibit 1 the amount of attorney's fees, $383,301.50, and expenses, $65,668.49, that it contends it is entitled to recover.[21]  Based upon the foregoing discussion, the Court concludes that the amount of attorney's fees the NAPBLI is seeking to recover must be reduced by $53,072.40 to $330,229.10,[22] and that the amount of expenses it is seeking to recover must be reduced by $2,951.76, to $62,716.73.

In accordance with Section 25 of the CIT, the Court finds that the NAPBLI can recover attorney's fees in the sum of $330,229.10.  That finding is based upon two subsidiary findings, concerning two elements used to compute the lodestar amount under Florida law.  First, the Court finds that 1778.4 hours, the number of hours for which compensation is properly sought (as reduced as a result of the above discussion), were reasonably, necessarily and actually expended in the defense of the claims brought against the NAPBLI by BAT, in violation of Section 25 of the CIT.  This subsidiary finding is enhanced by the experience gained by this Court, supervising this lawsuit for more than seven years.  During that period, the Court has been able to learn about the tasks in which counsel have

---

[21]The figure for attorney's fees is through November 30, 2004.  During the trial, the NAPBLI presented evidence that it incurred additional attorney's fees in December, 2004, and January, 2005.  As is explained above, the NAPBLI is not entitled to recover attorney's fees for that period, since those fees were incurred prosecuting its Counterclaim.

[22]The number of hours expended by both attorneys and non-attorneys for which compensation is sought, 2210.3, must be reduced by 431.9 hours to 1778.4 hours.

engaged, by conducting many telephone conference calls, overseeing uncountable discovery disputes and ruling upon a legion of motions.  Second, the hourly rates charged, which ranged from $145.00 to $260.00 per hour for attorneys,[23] and from $20.00 to $95.00 for non-attorneys, were reasonable and in accordance with similar rates charged in this legal market.  In addition, the Court concludes that none of the factors set forth in Rule 4-1.5(b)(1) of the Rules Regulating the Florida Bar warrants a reduction (or for that matter an increase) of the lodestar amount.  On the contrary, those factors cause the Court to conclude that $330,229.10 constitutes a reasonable amount of attorney's fees for the defense of the claims brought by Plaintiffs against the NAPBLI in this litigation, claims which were in violation of the CIT.

In addition, the Court finds, in accordance with Section 25 of the CIT, that expenses in the sum of $62,716.73 were necessarily, reasonably and actually incurred in the defense of the claims brought by Plaintiffs against the NAPBLI in this litigation, claims which were in violation of the CIT.

III.  Conclusions of Law

1.  This Court exercises supplemental jurisdiction over the Counterclaim of the NAPBLI.

---

[23]Yund's hourly rate increased to $370.00 in November, 2004.  Since the Court will not permit the NAPBLI to recover for services preformed by Yund after November 1, 2004, it is not necessary to decide whether $370.00 was a reasonable hourly rate.  In addition, it is not necessary to decide whether the hourly rates charged on behalf of Allen and Scott Brown were reasonable, given that the Court has concluded that the NAPBLI cannot recover attorney's fees for their services.

2.  In its Decision of September 20, 2004 (Doc. #240), the Court entered summary judgment in favor of the NAPBLI, as to the liability of BAT on the Counterclaim. Since BAT did not request reconsideration of that request prior to trial, the Court concludes that BAT has waived the argument that it is not liable to the NAPBLI for any fees or expenses, because its claims against that Defendant were not contrary to Section 25 of the CIT.  Therefore, the Court need not address that argument herein, even though BAT raised that issue in its post-trial memorandum.  However, despite that waiver, the Court has addressed BAT's argument above and found that BAT brought those claims in violation of that provision of the CIT.  <u>See</u> Finding of Fact #5, <u>supra</u>.

3.  The Counterclaim (Doc. #18) of the NAPBLI is governed by the law of Florida. Under that law, attorney's fees are based upon a lodestar figure, which is the product of the number of hours reasonably expended and a reasonable hourly rate. Courts will apply the factors set forth in Rule 4-1.5(b)(1) of the Rules Regulating the Florida Bar in order to determine whether such a product is reasonable or should be reduced or increased.  Florida law imposed upon the NAPBLI the burden of proving, by the preponderance of the evidence, the amount of attorney's fees and expenses it is entitled to recover in accordance with Section 25 of the CIT.

4.  The NAPBLI is entitled to recover for the attorney's fees and expenses incurred by its counsel when they traveled, while defending it in this lawsuit.

5.  Under Florida law (Florida Statutes § 57.104), the NAPBLI is not entitled to recover, as part of an award of attorney's fees, for clerical tasks performed by non-attorneys.


Based upon the foregoing, the Court directs that judgment be entered in favor of the NAPBLI and against BAT in the amount of $392,945.83, on the Counterclaim (Doc. #18) of the NAPBLI.  The Court also directs that judgment be entered in favor of RNI and SSI and against the NAPBLI on that pleading.  In addition, based upon its earlier Decisions in this litigation (see Docs. ##48, 76, 198, 240, and Notation Entries Appearing on Docs. ##53 through 55), the Court directs that judgment be entered in favor of all Defendants and against Plaintiffs on all claims set forth in Plaintiffs' Amended Complaint (Doc. #3).

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.


September 6, 2005

/s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:

Counsel of record.